UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| Ernesto Elizondo,<br>　　Plaintiff | § § § | CIVIL ACTION NO. __2:15-CV-00513__ |
| vs. | § § § | |
| AKAL Security, Inc. and Loretta Lynch,<br>Attorney General of the United States,<br>　　Defendants | § § § | A JURY IS DEMANDED |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Ernesto Elizondo, by his attorneys John Griffin, Jr. and Katherine L. Butler, as and for his complaint against Akal Security, Inc. and Loretta Lynch, in her official capacity as Attorney General of the United States, alleges as follows:

### NATURE OF THE ACTION

1.   If Ernesto Elizondo had been judged on the quality of his work, he would still be serving as a Court Security Officer protecting the public and the federal judiciary of the Southern District of Texas. His work was recognized as excellent before he was dismissed. Although he performed his job as a Court Security Officer with distinction, he lost his job because of disability discrimination.

### JURISDICTION AND VENUE

2.   This case is brought under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq. This Court has jurisdiction of this case according to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. This action is not related to any other case filed in this court.

3. The plaintiff has exhausted his administrative remedies and complied with statutory prerequisites by timely filing a charge of discrimination with the EEOC to challenge the disability discrimination he suffered by Defendant Akal Security, Inc. ("Akal"). He has requested a right to sue from the Equal Employment Opportunity Commission on his charge of discrimination against Akal and such right to sue letter has been issued. Plaintiff timely files this lawsuit to vindicate his rights.

4. Plaintiff timely initiated EEO counseling and filed a charge of discrimination to challenge the disability discrimination he suffered from defendant Loretta Lynch via the United States Marshals Service ("USMS"). More than 180 days have passed since he filed a formal complaint of discrimination. Plaintiff timely files this lawsuit to vindicate his rights.

5. Mr. Elizondo was working in the Federal Court building in Corpus Christi, Texas, and would have continued to work there if he had not been wrongfully terminated. Venue is invoked pursuant to 28 U.S.C. § 1391.

## PARTIES

6. The plaintiff Ernesto Elizondo is an adult resident of San Patricio County, Texas.

7. The defendant Akal Security, Inc. is a New Mexico corporation doing business in Texas, and may be served with process by serving its registered agent, CT Corporation System, 1999 Bryan Street, Ste. 900, Dallas, Texas 75201.

8. The defendant Loretta Lynch is the United States Attorney General and may be served with process at her business address, Office of the Attorney General, Department of Justice, 950 Pennsylvania Ave., N.W., Washington, D.C. 20530-0001. A copy of this complaint is also served on the United States Attorney for the Southern District of Texas.

## STATEMENT OF FACTS

9. Ernesto Elizondo is well qualified to protect the federal judiciary. He began his career in the Texas National Guard, then joined the U.S. Army Infantry. Mr. Elizondo served in Vietnam and was awarded three Battle Stars and a Vietnam Cross of Gallantry with Palm. During his 20 year Army career, Mr. Elizondo rose to the rank of First Sergeant in the military police at Fort Meade. In this position, Mr. Elizondo was in charge of more than 500 military police officers and personnel. After retiring from the military, Mr. Elizondo completed the police academy at Del Mar College and joined the Alice, Texas, police department. There, he was once again promoted to a position of authority, becoming a Criminal Investigator Sergeant. The next step in Mr. Elizondo's law enforcement career was with the federal government, as a Special Deputy U.S. Marshall transporting prisoners to federal courts.

10. After 34 years of military and law enforcement service, Mr. Elizondo was ready for a change. He applied to work for Defendants as a Court Security Officer ("CSO") in the Southern District of Texas. Akal and the USMS were eager to hire such a well-respected local law enforcement officer and veteran.

11. Akal contracts with the USMS to provide court security officers at many federal courthouses, including the federal courthouse in Corpus Christ, Texas during the time period at issue.

12. The defendants hired Mr. Elizondo as a CSO in September of 1998. Mr. Elizondo held this position until he was terminated on April 20, 2015.

13. Before he started working for Defendants, Mr. Elizondo was informed that he needed to undergo a physical in connection with his job. He took the physical, which included a

follow-up exam related to his hearing, and was thereafter put to work as a Court Security Officer for the Southern District of Texas.

14. Pursuant to Akal's contract with the USMS, Akal allows the USMS to evaluate CSO medical documentation and decide when CSOs employed by Akal will be terminated based on that documentation.

15. Defendants required that Mr. Elizondo submit to an annual fitness for duty examination. Mr. Elizondo complied with this requirement every year of his employment. Mr. Elizondo was found to be fit for duty by his examining physician each year.

16. There was never any issue regarding Mr. Elizondo's qualifications for the job. Mr. Elizondo's work performance always demonstrated his ability to perform the essential functions of the job.

17. Mr. Elizondo's last annual physical occurred on October 21, 2014 at a facility approved by Akal. The results of the physical were normal and confirmed that Mr. Elizondo was healthy and able to perform all the essential functions of the CSO position.

18. Despite Mr. Elizondo's long record of success as a CSO and the normal results from his October 2014 physical, the physician who reviewed those results for Defendants decided not to certify Mr. Elizondo as fit for duty. Instead, in February of 2015, the USMS and Akal notified Mr. Elizondo that he was required to undergo additional testing for his hearing.

19. Like many individuals who have spent a career handling firearms in the military or law enforcement, Mr. Elizondo has some hearing loss. Thanks to Mr. Elizondo's lifetime of care in using hearing protection while at the firing range, he has maintained normal hearing at speech frequencies and his hearing loss is limited to high frequency sounds. Defendants were

aware of this fact from Mr. Elizondo's annual physical and hearing exams. Defendants were likewise aware that Mr. Elizondo successfully treated this hearing loss with hearing aids.

20. Part of the additional hearing testing Defendants required was a test of speech recognition in noise. Defendants required this test even though there was no indication that Mr. Elizondo had any hearing loss at speech frequencies or had ever had difficulty in understanding speech on the job. Mr. Elizondo's hearing never affected his ability to do his job. The only basis Defendants gave for requiring the speech recognition test was that "the examinee uses a hearing aid in one or both ears." Defendants provided no justification that test requirement was job-related and consistent with business necessity.

21. Mr. Elizondo nonetheless complied with Defendants' demand for the hearing test, and provided the results on March 3, 2015. These results were consistent with previous years' hearing test results in almost every way. In particular, the pure tone audiograms showed essentially no hearing loss at speech frequencies and little change in Mr. Elizondo's hearing at any frequency. However, the March 3rd results had one important difference: Mr. Elizondo's aided speech recognition in noise was listed at 40%, where previous years had always exceeded 50%.

22. Defendants' physician seized upon the speech recognition number and issued a directive stating that Mr. Elizondo posed a safety risk and was not medically qualified to perform his job as a CSO. Akal then promptly terminated Mr. Elizondo's employment.

23. Neither the USMS nor Akal gave Mr. Elizondo any opportunity to contest the termination, ask for a new hearing test, or request an accommodation. The first notification that

Defendants gave to Mr. Elizondo that there was any issue with his hearing test was the notice of termination.

24. The sole reason Defendants gave for Mr. Elizondo's termination was the result of the March 3, 2015, speech recognition test. However, in performing the speech recognition test, the audiologist failed to follow the protocol specified by the Defendants. After the initial 40% result, the audiologist should have varied the intensity of the sound to see if a result of at least 50% could be obtained, then provided the results of the test at the various intensities. The audiologist did not do this. The fact that the test was not performed properly was obvious from the results provided to Defendants. Defendants relied on the test as their only basis for terminating Mr. Elizondo, even though they could see that it violated their policies.

25. Defendants further violated their own policies in that they terminated Mr. Elizondo based on a single outlier test result. Defendants' policy is to *investigate* any medical test result that does not meet their standards, particularly when the result is inconsistent with results from prior years, from the results of other tests, or from the individual's demonstrated work performance. Each of these factors was present in Mr. Elizondo's case—he had passed the speech recognition test in previous years, the other 2015 test results showed good hearing in speech frequencies, and he had never had difficulty recognizing speech on the job—yet rather than follow up as their policies required, Defendants simply fired him. In other words, even if Mr. Elizondo had been given the proper test protocol and failed, the inconsistency with other results would have called for investigation, not immediate termination.

26. Defendants preempted any interactive process by firing Mr. Elizondo. They offered him no accommodation and gave him no opportunity to request an accommodation. Mr.

Elizondo did not even know that the defendants perceived his hearing as a risk until they fired him.

27. Defendants likewise violated Office of Personnel Management (OPM) rules for medical disqualification of veterans. Defendants knew that Mr. Elizondo's service entitled to veteran's preference benefits. As such, Defendants were required to submit their proposed medical disqualification of Mr. Elizondo to OPM for review before taking any action. Had OPM reviewed the record in this matter Mr. Elizondo would not have been terminated, yet Defendants entirely failed to comply with this mandatory review.

28. Even though Defendants knew that Mr. Elizondo was eminently qualified to work as a CSO, they subjected him to illegal screening requirements and made illegal demands for medical examinations in violation of the Rehabilitation Act, 29 U.S.C. § 791 et seq., and the ADA, 42 U.S.C. § 12112(b)(3), (b)(6), and (d)(4)(A). Though Akal subjected Mr. Elizondo to this discrimination pursuant to its contractual arrangement with the USMS, Akal was Mr. Elizondo's employer and the responsibility for the discrimination falls on both defendants. See 42 U.S.C. § 12112(b)(2). Defendants then fired Mr. Elizondo on the basis of a single aberrant result from an incomplete test. This firing violated their own policies, OPM rules, the Rehabilitation Act, 29 U.S.C. § 791 et seq., and the ADA, 42 U.S.C. § 12112(a). These illegal acts caused Mr. Elizondo's damages, including lost wages and benefits and mental anguish.

## COUNT I – The Americans with Disabilities Act

29. The plaintiff is a qualified individual with a disability. The plaintiff performed his job as a Court Security Officer with distinction, but was subjected to illegal screening requirements and medical examinations because of a disability, impaired hearing, in violation of

42 U.S.C. § 12112(b)(3), (b)(6), and (d)(4)(A). He was then fired because of his disability, in violation of 42 U.S.C. § 12112(a). He has an actual disability as he was assessed by Akal. He was regarded as having a disability, based on Akal's perception that he was substantially limited in his hearing. He was discharged because of a record of a disability, and in a manner that preempted the interactive accommodation process. Akal's conduct violates the Americans with Disabilities Act, which prohibits discrimination in employment on the basis of disability. Nor can Akal contract out of its obligations under the ADA by allowing the USMS to subject its employees to discrimination under the ADA. 42 U.S.C. § 12112(b)(2). The plaintiff is a qualified individual with a disability and was discriminated against because of his disability, causing his damages.

## COUNT II – The Rehabilitation Act

30. The plaintiff is a qualified individual with a disability. The plaintiff performed his job as a Court Security Officer with distinction, but was subjected to illegal screening requirements and medical examinations because of a disability, impaired hearing, in violation of 29 U.S.C. § 791 et seq. He was then fired because of his disability, in violation of 29 U.S.C. § 791 et seq. He has an actual disability as he was assessed by the USMS. He was regarded as having a disability, based on the USMS's perception that he was substantially limited in his hearing. He was discharged because of a record of a disability, and in a manner that preempted the interactive accommodation process. The USMS's conduct violates the Rehabilitation Act of 1973, which prohibits discrimination in employment on the basis of disability. The plaintiff is a qualified individual with a disability and was discriminated against because of his disability, causing his damages.

## DAMAGES

31. The damages suffered by the plaintiff include lost wages and benefits as well as compensatory damages for the injuries suffered at the hands of the defendants, including, but not limited to, mental anguish.

32. Further, because Akal's actions were of the sort that render the imposition of punitive damages appropriate, the plaintiff is entitled to an award of these damages, which he seeks.

## RELIEF REQUESTED

WHEREFORE, the plaintiff asks this court to enter a judgment:

a. Declaring that the acts and practices complained of in this Complaint are in violation of the Americans with Disabilities Act and the Rehabilitation Act of 1973;

b. Enjoining and permanently restraining these violations of law;

c. Directing the defendants to pay the plaintiff actual and compensatory damages that he suffered, past and future;

d. Directing the defendants to reinstate plaintiff, or in the alternative, award him front pay;

e. Directing Akal to pay the plaintiff punitive damages for its conduct in an amount as yet to be ascertained;

f. Awarding the plaintiff pre-judgment interest on the amounts owed at the maximum rate allowed by law;

g. Awarding the plaintiff the costs of this action, together with reasonable attorneys' fees and expert witness fees;

h. Awarding the plaintiff post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

i. Awarding the plaintiff such other relief, legal or equitable, as may be warranted.

## JURY DEMAND

Plaintiff demands a jury trial and tenders the appropriate fee.

Dated this 22nd day of December, 2015.

        Respectfully submitted,

        /s/ John W. Griffin, Jr.
**John Griffin, Jr.**
Federal I.D. No. 2238
State Bar No. 08460300
**Michael J. Neuerburg**
State Bar No. 24075562
203 North Liberty Street
Victoria, Texas 77901
(361) 573-5500
Fax: (361) 573-5040

**Katherine L. Butler**
Federal I.D. No. 4734
State Bar No. 03526300
1007 Heights Boulevard
Houston, Texas 77008
(713) 526-5677
Fax: (888) 370-5038